15-24-04 in re Marriage of James Breashears meeting Karen Brazil Breashears The lawyers, you can stay right there gentlemen, identify your names for the record please. Good morning, Michael DiCominico from Lake Tobacco on behalf of Landon Walters Breashears who is the NAPA lead as personal representative of the estate of James Breashears. Thank you very much. All right, and gentlemen, rest assured we've read your briefs and are well aware of the legal issues involved in the case and the factual issues as well, so you don't have to bother yourself by going through all that. So let me ask you, Mr. Taylor, are you ready to proceed, sir? Yes. All right. Are you? Go ahead. I did have one question. It does not, but I'm going to ask the clerk. This is not to amplify, it's to record. So I want to make sure you're on the record, of course. So, Mary Ann, can you possibly move the microphone down so council, if you get a little closer to the podium, council, maybe. And move it toward the right, Mary Ann. Is that a chair fit here or not? I'll make it work. Well, Mary, maybe move that water. You can just be on the side if you'd like. At the lower table. Okay. And, yeah, move it down. Thank you, Mary Ann. Is that okay? Yes. Water in the way? Council, you may proceed. Thank you, Your Honor. And I would like to reserve my five minutes for rebuttal. Oh, fine. Yes. Thank you very much. Good morning. Again, Raphael Taylor on behalf of the respondent appellant, Karen Brazil-Breshears. This is a case in which I believe that there's really two main points. And one is that James, in this matter, did not provide appropriate circumstances for the bifurcation to have been granted in this matter. And another important point is that James misled the court in order to obtain the bifurcation judgment. Now, James sought to cheat Karen out of her share of the assets that they had acquired during the marriage. He states that his purpose in seeking bifurcation is to, well, to be able to not be married when he dies. Or not be married to Karen when he dies. And to be able to remarry. Now, neither one of these issues by itself is sufficient or of a similar nature to the factors that are set forth in the Cohen case. And he, in fact, did remarry. And he, in fact, did die in close proximity to the court's bifurcation of the litigation. So what he alleged is true. Well, you're absolutely right that he did die and he did remarry. However, this court has stated that, first of all, death by itself is not in and of itself a reason for bifurcation. In the cases, even the cases that were cited to by the trial court, the court said, in this particular case, bifurcation is appropriate. So they looked at the factors within the case. They would not say in either of those cases, well, death is a sufficient reason for bifurcation. It's not a per se reason, but it is certainly a circumstance that it is within the trial court's discretion to take into account, is it not? I mean, I think Copeland makes that clear. We've made that clear a couple of times. Yes, it is something to take into account. I believe, though, that another thing to take into account is that one of the things that was somewhat coaxed from James during his testimony was that he wanted to distribute his assets, he said, before he died. The court specifically said, okay, but you need to understand that what you believe are your assets may not be completely different from what I decide are your assets. Yet, and still, after the bifurcation judgment was answered, James goes out, he changes the beneficiaries on the life insurance policies, he changes the beneficiaries on his retirement policies. But all that can be addressed by the trial court, can't it? All that can be addressed in the remaining part of the divorce proceeding. Can it? I mean, that's a real question. That's not a hypothetical. It's a rhetorical question. I understand your point. The fact that it can be addressed, though, Your Honor, I don't believe overcomes the fact that it would appear from his actions, so quickly following the judgment, right after the court tells you, don't do anything with any of your assets, that he committed a fraud upon the court. His real reason for asking for the bifurcation, so that he could quickly go out and make these transfers, so that he could take some of these assets away from Karen for her use. Was there a specific court order that said you can't make any changes to any joint tenants or beneficiaries on anything? Was there a specific order that addressed that? There wasn't an order as of July the 27th. Subsequent to that, there was an injunction that was answered. The reason that the argument is being made today that he made those statements, the court made those statements, is to show that his actual intent was to do this. Even though he told the court, the only thing I'm looking to do, I want to die, not marry to Karen, and marry to the person whom I really love, which is Quinta. But it's alleged in the briefs that your client did the same thing. I'm sorry? Made some changes to accounts or beneficiaries or whatever. It's in the brief that Al Gatia's made. Is that true? Your Honor, the position on behalf of Karen is that the changes that she made were changes that she had envisioned would be to preserve the property. If you'll take a look at the record, if you take a look at the record, there were instances where, for example, there was money that was needed for damage that was done to the property. There were building code violations. There were other items. There were repairs that were needed to the property. And Karen felt that, okay, we need to do something about this. Then the court stepped in and said, well, wait a minute. We're going to have a management company to take care of this. We're going to institute these injunctions so that if any money is taken from any place, obviously the trial court will know about it. But that's where that came from. Whereas we have a situation in which there wasn't a specific reason other than he wanted to do so for James to change the beneficiaries. James took monies out of an account, but those monies did not go to pay for anything for any of the properties. Okay. Counsel, give me a best case, best and only case that says that this bifurcation was inappropriate or the court didn't have a sufficient basis to do it. Well, Your Honor, unfortunately, I would have to go back to Copeland, excuse me, v. McLean, where the court specifically stated that we are not stating that, you know, death in and of itself is an appropriate reason that we have to take the specific circumstances. And I believe there is even language within it that said we understand that this could be a situation where both parties could try to use this to their advantage. The party who is terminally ill could use this to their advantage to basically cut off the timeframe of when the court can consider what is marital property. And then marital property could increase in value, but that value wouldn't be taken. And the other side could take that to mean that, okay, if I draw this out, the person will die and I'll just get everything. That, to me, is significant because it tells the court you have to really take a close look at this. You can't just say, well, you know what, the person is going to die, and all I need to do is confirm that he's going to die, and that should be sufficient reason. Copeland also emphasizes, and it sounds like your arguments to some extent underscore, the need for us to be respectful of the discretion of the trial court. The trial court, the decision to bifurcate a judgment of dissolution of marriage rests within the sound discretion of the trial court. And I guess I'm not clear on where there was an abuse by this trial court of that discretion. There was an abuse, Your Honor, in that one of the issues that came up in this was there was some brief attempt at discovery, even though this had moved along very quickly. James, in this matter, provided what discovery he did on the morning of the trial. So how could the court have looked at this and said, okay, when we're reserving these issues, we've actually looked to see, first of all, whether or not there's complications and entanglements. In Copeland and in the Brown case that they cite, too, the trial court was able to state the parties have separate assets. They also had premarital agreements. Well, there weren't premarital. There wasn't a premarital agreement in this case, and it was clear that these assets weren't separate by the fact that the judge said, well, these are assets that are owned by the two of you. Never mind the fact that James may have been the one who controlled, for example, the real property. They were still assets that were combined by the parties. Also, there was testimony at the trial that the parties had joint tax returns. So they were even filing their taxes together. One other point that I'd like to mention, because it did come up, I believe, in the Brown case, was that the court said, well, there aren't even any issues with regards to medical insurance. In this particular case, the trial court specifically stated, I'm acknowledging that Karen is a cancer survivor. She has a need for insurance. We need to see to her medical needs between if I grant this bifurcation, the time that the bifurcation judgment is entered, and the time during which the final judgment is entered in this case. So there were all of these issues that the court really needed to look at before they could say, okay, this is the type of case where there's appropriate circumstances, and we can sufficiently say that we've reserved all the issues. We've made allowances for all the issues necessary for a bifurcation to take place. So you're suggesting the trial court knew nothing about the assets? Were assets even disclosed? I mean, discovery had to show something. Was there a great disagreement about the assets? Well, Your Honor, I don't think that or let me say this this way. There was some discovery. There was a 13.3.1 disclosure statement that was tendered by James. There was some additional documentation, which he testified he provided to his counsel, which was on a disk, but that disk hadn't been reviewed at that point in time because, again, this documentation, this disk, was provided on the morning of trial. So the court couldn't have looked through it or couldn't have had an opportunity to say, I know specifically what there is to the properties here. But the court wasn't acting in the dark, right? I mean, they knew there was a huge PI settlement, right? Yes. And they knew there was joint property real estate that was owned by the two of them? I'm sorry, I couldn't hear. There was other real estate or other property that was owned by the two of them? Yes, but what I would say to that is the court wasn't even aware of how the property was held. And I think that that would have made a difference if the court would have known all the details with regards to the type of property, how the property was held, even issues. Well, they each had a joint, let's say they each had an ownership interest in it. What difference does it make what the ownership interest is with the court at that time? I think it makes a difference, Your Honor, because the court is supposed to look at everything in totality before determining what can be done in terms of proceeding with the bifurcation. Now, in and of itself, the court could have said, I don't care if this is held in trust and the trust is held by somebody else, when it makes its determination with regards to distributing the marital property. But in terms of at the time of the bifurcation, the court couldn't say without a full knowledge of the assets, well, these assets are separate, this is the type of situation where we can just move ahead with the bifurcation and not have to worry about there being any type of excessive litigation that would need to go forward before I can make my judgment with regards to distributing the assets and the debt. All right. Do you still think the proceeding should abate in divorce division? Abate, yes. What about the Mural Act, Section 750-401B that says the death of a party subsequent to a judgment but before a judgment on certain reserved issues shall not abate the proceedings? Of course. What do we do with that section? Well, Your Honor, my specific position is that the bifurcation should be vacated, at which point in time the bifurcation would abate. I understand. You agree that if the bifurcation was appropriate that there's no abatement. Do you agree with that? Yes, Your Honor. Okay. Well, I'm assuming. I'm sorry. I misunderstood you. No problem. Continue. Okay. So getting back to briefly the issue of the entanglements, we, in this particular case, we didn't really get to the issue of what would happen with the medical insurance for caring. The judge made the decision at the trial court level without having actually decided that, basically said, well, we can come back on that issue. So it wasn't decided when the court made its determination that bifurcation was appropriate. There wasn't anything done with regards to what would happen with the tax returns in this issue. Another issue that the trial court brought up that really didn't get into anything was the fact that one of the issues of excessive entanglements that the courts have brought up in previous cases, including, I believe, Copeland and Brown, is really what happens if one of the parties who was a party to this divorce then remarries. What happens to that then third party's interest in properties? Well, that issue wasn't really addressed other than the fact that the court acknowledged that James planned on marrying someone else. That was one of his reasons for asking for the bifurcation in the first place. But then marriage, even, in and of itself, is not a sufficient reason for asking for a bifurcation. If you go to the Kennett case, and I won't get through all the details, but one of the reasons why the court granted that wasn't so much that, you know, the wife said, I just love somebody else and I want to get married and not have to wait for the divorce. There was an issue with a child and a health insurance issue where she could not get health insurance for her child with her fiancé unless she was his wife. So is it a fair summary of your argument that the trial court abused its discretion because it didn't have enough information at the point of bifurcation and that your client didn't have enough information, that it was without enough factual development that the bifurcation occurred? Maybe down the road bifurcation would have been appropriate, but the point at which it happened, not enough had been explored. Is that basically what you're saying? It is, Your Honor. And I'll even add on top of that that subsequent to that, like I said, more things came to light with regards to the other actions that James took and the need for the court to enter injunctions to keep the parties, because obviously it applied to everyone in the case, from doing anything with the assets. So, again, had they had the information that they had, you know, months down the line, then... The result might have been different. Exactly, Your Honor. That's exactly right. Finish up? No, I'll just say that... Before you finish up, let me ask. Sure. Getting down to the conclusion on this, aren't you actually presenting us a venue issue? I mean, regardless of the status of the marriage, these economic issues either are going to be resolved in the divorce division or it's going to go to probate. And what's the significant difference? Well, because... We're dealing with both judges, and our circuit court judges have jurisdiction, have knowledge over the matters. I'm sorry. So why do you want to have it thrown into probate? Well, Your Honor, the reason... And not before, presumably, a very good divorce division judge. Your Honor, because the two estates would be different. The marital estate would be different from the probate estate. As one of your fellow justices pointed out, the divorce court judge can do whatever she deems necessary with various assets. When it comes to the probate court, they can only deal with what is considered the decedent's estate. So, for example, that's another reason why it was important to know how are the properties held. If the properties were held in joint tenancy, well, then everything just goes to the surviving person, so that property would not be part of the probate estate. Although the divorce judge could have made some type of a ruling with regards to that. If the properties were held in trust and there were beneficiaries to the properties, they also wouldn't be part of the probate estate because they had beneficiaries, yet the domestic relations judge could have made some type of a ruling with regards to the properties or some type of an offset because that is the discretion that she has under the law. So the probate act very specifically states what can be considered part of the decedent's estate. So that was one of the reasons why it's important to know what the assets are, how the assets are titled, how the assets are held, because the probate judge won't have the same level of discretion, won't be able to deal with the same issues as the domestic relations court. If that's the end of my time, Your Honor, I can just come back on my rebuttal and just finish up. And if I'm understanding your last answer, and this is my assumption, that certain assets could have likely flowed to your client because she held them in joint tenancy with her ex-husband, that she won't get as much in the divorce division. Had he died before the divorce decree was entered, she would have stood to benefit by acquiring certain assets because they've been held in joint tenancy. Yes. She would have done better. Yes. Okay. Maybe. Maybe. No, pretty much. No, I don't think it's a maybe issue, Your Honor, because, again, he did nothing to change the joint tenancies at all. Nothing. Zero. That property was still in joint tenancy when he died. Whoever he was married to, she takes the joint tenancy. Right. So how does that change anything? Well, it doesn't change anything for that, but then in the probate court, they wouldn't have dealt with that issue. Correct. That would just go to the joint tenant. Right. But what I'm saying is that since the court didn't know how all of the properties were held, that's why I gave the example. What if the properties were held in a trust? And what difference does that make? The trustee would administer that. Either dead or alive, who he was married to doesn't make any difference. Yes, but in terms of the probate court, they wouldn't have dealt with the issue at all. In terms of the domestic relations court, a judge could have said, for example, because I'm not going to deal with this issue with the house, I'm going to offset something to wife from some other assets. So she still might have come out with something, but she still didn't. Not if he were dead, counsel. That's what I'm saying. No. Thank you. You can finish up. I'll end there and just come back to my rebuttal. I just wanted to make sure I answered all of your questions. Thank you. You did. Thank you, counsel, very much. Good morning again. May it please the Court. Michael D. Domenico for the estate. The Court has mentioned a few times to counsel the standard of review in this case, use of discretion. The panel has to be able to find no reasonable person would take the position adopted by the circuit court on the evidence that it heard at the bifurcation hearing, I think, on this record as a struggle. What about the argument that it didn't have enough information before? Can't that be an abuse of discretion? Not on this record. The point that the discovery was tendered in court that day is accurate, but the judge heard testimony about the life insurance policies, the pensions, the investment properties, how those properties were run, who ran them. It heard testimony about the medical malpractice settlement, the cash proceeds that were received. It reviewed the financial affidavits. It identified the quality of the assets that were going to make up the marital estate and the potential non-marital estate. It heard evidence from both parties about their income and their expenses and all of their assets. Was it done in an expedited manner? Yes. This man was dying, and all of this was done on an emergency basis. It was a seasoned divorce judge that heard this case, who was a divorce lawyer before she took the bench. She was well aware of the quality of the assets and what could be preserved and what couldn't be preserved, and if there was going to be any issue with disposing of the property issues after the bifurcation. The idea that a terminal medical diagnosis is a good ground for a bifurcation has been on the books in Illinois now for 25 years. A story of decisive should be kicking around here and is afoot somewhere. I'm not suggesting that it's a bright-line rule that a terminal medical diagnosis will always value a bifurcation, but it's pretty compelling. And the Cochran Court acknowledges that at least three other states have all taken a similar view that they did, that a terminal medical diagnosis is good grounds to bifurcate. When wouldn't it be, maybe? I suppose if there could be a showing that the court could not adequately protect the property interests of the surviving spouse, if there could be some showing of that, then even death might give a judge pause to enter a bifurcated judgment. These assets were straightforward. If you read the transcript of the hearing after Judge Scaniccio bifurcated the case, she immediately snapped into an injunction hearing to talk about what the assets were, how do we protect them, and make sure none of the assets are going to be moved around address the property and adjudicate the property issues at a later date. Counsel, as far as abatement to the action, do you think it should be abated if we find the bifurcation is appropriate? No. The statute says that the cause of action carries on and the court is free. To the point that you were addressing, Counsel, at the end, about whether it should be in probate court or divorce court, that cuts both ways, not knowing the title. Marital property is not conditioned upon legal title. Marital property is an equitable title and is an equitable claim. So if he had property maybe in his own name or maybe in joint tenancy with one of his other children or his fiancée, if we go to probate court, she may be out of luck. If you're in divorce court and there's the concept of marital property, title doesn't matter. So she might be better off in the divorce court, which is something that came up at the hearing. You're questioning why are they necessarily opposing this. This idea about not filing joint tax returns. The man died a month later. There's no requirement to file a joint tax return anyway. So the entanglements that are in the right brief, and as I heard this morning, were a little bit generalized. This court heard evidence about the quality of the assets and made all of the proper reservations pursuant to the statute to later adjudicate the property rights. She'll balance that. We'll break the 503D factors. We'll finish discovery and we'll divide up what's here. What about the argument that Counsel made, and that we didn't quite spend too much time on fraud on the court, fraud on the trial court in terms of, for example, the Med-Mal settlement? I understand the fraud issue to be that there was a later filed declaratory action that seemed to take a contrary position. There's no adjudication of that. The fact of the matter is it's a reserved issue. The trial court would make all the determinations about characterization at a later date. So I don't see how it impacts. Well, optically it may not look good. I don't see how it impacts the propriety of the bifurcation itself and whether the judge was within her discretion to do so. The court doesn't have any other options. Thank you. Thank you. Thank you. Final word, Mr. Taylor. Thank you. Okay. When counsel makes reference in dealing with the abuse of discretion. I'm sorry to interrupt you. Mary Ann, move that mic down for me, please. Okay. Thank you. Thank you. Thank you. Sorry about that. So going back to counsel's mention referring to abuse of discretion with regards to the court heard testimony with regards to this issue. Again, there couldn't have been a full hearing with regards to all issues because, again, all of the discovery issues hadn't been related to the court. And I believe that there was conflicting testimony with regards to some of the issues. And, again, without having all of the evidence for the court to weigh in addition to the testimony, I don't believe that you can just write off, and I don't say this as a slight to counsel in his argument, but you can't just then write off the issue of, okay, there wasn't an abuse of discretion because we had this expedited hearing. To have a truly expedited hearing, what the court could have done, and I know that you don't step into the place of the court, but I'm just saying, to have a truly expedited hearing, the court could have said, here is a truly shortened discovery schedule. Let's say you've got 10 days or whatever the case may be, given under the circumstances that you didn't have a lot of time with the health condition of the petitioner, get the discovery done, get the information, and then we will have a hearing to decide this issue. Moving on, since I realize I don't have much time myself, regarding the fact that there was a terminal illness, we concede that, I mean, the fact of the matter is that the man did pass away shortly thereafter, whatever it was, three weeks, I believe, not a very long period of time. And the argument that, well, the court was able to protect the party's interest, when you talk about the fact that there was eventually an injunction that was answered, that injunctive order was answered in November. And we're talking about the period of time between July and November when the actual order was answered. When, Justice, when you had asked before, well, did the people walk away with an order that says you can't do this, you can't do that, that did not occur on July 27th of 2015. The actual injunctive order was in November of 2015. That was what allowed James to take the actions that I've already spoke to, so I won't go back into detail on those. And then just to clarify, on the issue of the joint tax returns, the purpose of even making that argument was that the parties had a history of filing joint tax returns. That goes back to my argument of the, they're not being separate assets. They had the property together, they filed their taxes jointly with regards to all of their assets, all of their income, all of their debts together. I just wanted to clarify that point for the court. So if there are no other questions, that was all that I had. No, Justice? No. Any questions? No, thanks. Thank you. Thank you, Your Honor. And thank you, gentlemen, for your presentation here today. And we will be discussing the matter, and we'll be hearing from you shortly. Thank you. Take it under advice. Yes, thank you.